Good morning. You may be seated. All right. This is case number 4-12-0988, Bona Fide Partnership v. Regent Insurance Company et al. We have Attorney Amelia Baragas for the appellant. Did I say your name right? Yes, ma'am. Thank you. And for the appellee, we have Patrick Silver and Gary Davis. Are both of you going to argue? No, Your Honor. Mr. Silver has me on the record. Okay. Great. All right. Ms. Baragas. You may proceed. May it please the Court. Opposing counsel. Good morning. Good morning. This case deals with the question of insurance coverage, the language of the policy, and what it does or does not require the insurance company to pay to the policyholders when they experience a catastrophic loss. Both of the briefs go through a very detailed analysis of the language of the policy, and in particular, the provisions of the policy that are at issue, the additional coverages and the debris removal clause. It does not seem as if there would be much utility in conducting an additional analysis of that language this morning. So what I would like to do, instead of going through the specific language, is to talk about a couple of global issues that come up in the briefs, and that I believe will help the Court make its decision here today. And the first of those is with regard to the limits of insurance on this policy. And to stress that there is an agreement between both the plaintiff and the defendant, the appellant and the appellee in this case, that the limits of the policy are not global limits, that payments may and should be paid in addition to the limits of the policy. And in fact, in this case, there were payments made in addition to the limits of the policy. Specifically with regard to debris removal, a general casualty in region insurance paid the policyholders an additional $10,000 in recognition that their losses were not fully covered, and in recognition that the language of the debris removal section required that payments be made. And more specifically, and this mirrors the defendant's brief, when it comes to the additional coverages, there are three categories of items within there. There are categories where there is an express statement that the limits of the insurance do not apply to that subsection. Business income is an example of that. There is language in the policy that says nothing in this section is limited by the limits of the policy. Then there is a second category of items, and this is by far the larger category of items under the additional coverages. And these are areas where the policy itself does not say that they are not limited by the limits of the policy, whether the language of that section internally establishes its own separate limits of that coverage. And debris removal falls into that subsection. The third category, which is not at issue here, but just to mention it for your information, is a category, and this is again a narrow category of a few of the additional coverages, where it is silent. It does not say one way or the other what impact the limits of the policy have on those sections. But when it comes to the category that the debris removal falls under, the additional coverages where the language of the policy itself or that internal subsection sets forth a limitation. Payments are required to be made over and above the limits of the policy. And that is why, as the facts state in this case, General Casualty paid $10,000 for debris removal. If the argument were that the limits of the policy were absolute, that they were global, and that no additional payments could ever be made, that $10,000 could not have been paid rightfully. But they are not arguing that. They admit that they needed to pay the $10,000 as additional over the face amount of the declarations page. Yes, Your Honor. And this creates a logical problem for the defense. Because if they are required to pay this $10,000, which is listed in the policy as debris removal additional coverage, it raises the question, why then are they not required to pay debris removal coverage? The $10,000 is an additional coverage. It happens when either one of two circumstances occur. And in both of those instances, that additional coverage is available to the policyholder when they are not being fully compensated for their loss. One example is when the amount of debris removal exceeds the limitation set forth in Subsection 2, which is 25% of the total amount paid for the direct physical loss. And in that instance, the policyholder is entitled to an additional $10,000 in addition to the debris removal coverage. And in the second instance, which is the facts before the court in this case, when the loss for the building plus the debris removal loss exceed that limit to the policy. In that case, again, the policyholder is not being fully compensated. So in that instance, the policy allows for an additional $10,000 to be paid to the policyholder. But didn't the policy also provide that if the insured wanted additional debris and removal coverage, they could pay an extra amount and that would be reflected then in the declarations page? Yes, Your Honor. If the insured wanted to purchase additional overage is how I would classify that. Because that applied only to the debris removal additional coverage. That $10,000 that is only paid in instances where the policyholder is not being fully compensated already. In that instance, if the policyholder believed that that was a likelihood or that they wanted to control their risks, they could ask for additional debris removal additional coverage. So instead of $10,000, perhaps they could purchase $25,000. But again, that would be in addition to the payments made under subsection 2. And that is the interpretation that is appropriate in this case because of the language of subsection 2. Subsection 2 of the debris removal section sets forth a limitation for debris removal payments under this additional coverage of 25% of the amount the insurance company pays for direct physical loss. Then it goes on to say, but this limitation, the 25%, does not apply to any additional debris removal limit provided in paragraph 4 below. That language is clear that any payments made under subparagraph 4 are outside of and in addition to paragraph 2. Otherwise, and this is in the appellant's reply brief, otherwise there would be a situation created where there would be a vast inequity in the amount of money a policyholder could receive. As the defendant has argued, somehow section 2, paragraph 2, is supposed to be separate from paragraph 4. And that these are two discrete subsections. And that you get one or the other. And that if the circumstances that trigger the $10,000 payment under paragraph 4 are triggered, the paragraph 2 no longer applies. But in that instance, we can easily see how inequitable that would be and how unreasonable that interpretation is. Counsel, I have a question for you. Is that really our concern? I mean, we have to look at what the policy covers and the parties obviously made a decision whether or not to purchase this policy and the insurance company made a decision whether or not to offer it. Isn't that the end of the inquiry? Yes, Your Honor. If the language is clear that there is no additional coverage, then there is no additional coverage. None can be created because of inequity or a desire to have greater coverage. That is correct. But in this case, and we can turn to some of the other materials brought in for reference to how that would have been done. How this policy could have been clear if that was the intent of the insurance company. Because here it's not the intent of the insurance company. They may have intended to never pay more than $10,000 under subsection 4. But if that is not what the language of the policy reflects, then the policyholder is not bound by their intent. And we can see that in the cases from other jurisdictions that were cited by the defendant at the trial court level and then again by both parties at this level. But the policy was clear when it came to business income expense and there was another pollutant additional coverage. The policy clearly says these are coverages over and above the limits in the declaration page. Yes, Your Honor. But it doesn't say that with regard to debris removal. No, it does not. And our lives would be much easier if it had. If each subsection had explicitly said this is covered, this is not covered. Go ahead. I'm sorry. I didn't mean to interrupt you. I apologize. Under Paragraph 2, I wanted to ask you this. It says the most we will pay. It doesn't say we will pay 25%. It says the most, the absolute most we'll pay is going to be the 25%, except that the limitation of Section 4 won't affect that amount. So when they say the most we will pay, don't you have to look at the rest of the contract to see what other limits are on there? So, for example, when you get down to 4A, it says if the sum of direct physical loss or damage and debris removal expense exceeds the limit of insurance, then we'll give you the other $10,000. We'll give you an additional $10,000. Yes, Your Honor. I think that there's two answers to your question. First, there's a question that I believe what your question is, is when the subsection 4 says we will pay up to an additional $10,000, the question is in addition to what? In addition to the limits of the policy or in addition to the debris removal coverage? And in this instance, without additional clarifying language, because this is within the debris removal section and it's discussing payments made for debris removal, the most reasonable way to read this is that that $10,000 should be made in addition to the other debris removal payments. How much total do you think you were entitled to under this policy? Under this policy, the policyholder would have been limited to the 25%, which was... $246,000. Actually, about $400,000. $462,000. You're talking about the available coverage as opposed to the amount that, under the facts of the case, could have been recoverable. Yes, Your Honor. They had a pool of them up to that $400,000, which is 25% of their loss. But they did not need that much money. $200,000 is what they incurred, right? $246,000? Yes. I believe it was $246,000 in the neighborhood of that. Yes, plus then the $10,000 in additional coverage. Okay. So that's what I want to get to. So under your theory, your client was entitled to $1,850,000 because there was a total loss of the building and the loss exceeded that amount, and that was the limit. They were entitled to $246,000 for debris removal, and then they were entitled to $10,000 for additional debris removal, and you're claiming that even though their total cost for debris removal was $246,000 and they were totally satisfied, that claim would have been totally satisfied. So they're getting a bonus of $10,000 for debris removal? Looking at their losses, Your Honor, it's not a bonus. Their loss was not fully compensated. But they only insured for $1,850,000, so they were totally compensated for their loss based on the premium they were paying. They insured for the $1,850,000 and the additional coverages that the policy sets for. Right, and the additional coverages for debris removal. Yes. And their debris removal cost was $246,000. Under your theory, if they were paid for that, your theory is they're then still due an additional $10,000 even though their claim for debris removal was totally satisfied. Yes, Your Honor. And the reason for that is not because they were not fully compensated for the debris removal, but it's because in Section 4, it says that if the direct physical loss or damage plus debris removal exceed the limits of this policy, you get another $10,000. For what? What does that represent? It is in recognition that in that instance, the policyholder is not being fully compensated for their loss because their losses looking at it globally, for the building and the debris removal, have exceeded the money available to them. And it says up to an additional $10,000. How is it determined as to the amount under Section 4, under your reading of the policy? How would you determine the amount? What goes into that calculation? It's not saying we will pay $10,000. We will pay up to an additional $10,000. So, I mean, I have trouble trying to figure out what that $10,000 represents. Is it to be for debris removal? Is it to be recognition that the loss under the $1,850,000 doesn't completely satisfy the loss that the insurers sustained? This is where I certainly have questions for Mr. Silver here in regards to the policy language that he's arguing is clear. But for the appellant, that provision, that sentence, to me, under your reading of the policy, I can't quite make the logical connection. What is that payment for? And how would you calculate the amount since it isn't a flat $10,000? It's up to an additional $10,000. So it seems that it's meant to be for something beyond maybe what you've suggested so far. I understand your question. Thank you for clarifying. As for what that money is allocated for, why they're being provided an additional $10,000, I believe that's difficult to ascertain. The policy does not provide any explicit language saying this is why we're giving you $10,000. My best deduction from the policy, as well as both for A and for B, is in recognition, as I've stated, that the policyholder is not being fully compensated. Because remember, when looking at this, it's not just subsection A that that language controls. It also controls subsection B, an instance where the policyholder, the 25% limitation has prevented the policyholder from being fully compensated because for whatever reason their debris removal costs are higher than that 25%. So if we go down the road that the defendant has argued, that when 4A or 4B occurs, it is difficult to say that that is a logical conclusion that the $10,000 controls and that it is the only debris removal payment. Because then we have a situation where a policyholder could have hundreds of thousands of dollars in debris removal costs, and if it goes over that 25% threshold, they get $10,000. They don't get $150,000. Only if the global law exceeds the face value of the declarations page. Isn't that true? I'm referring, actually, to subsection 4B. And there are instances where the 25% number could limit payments. And I went through one of these in the reply briefing. Okay, I know what you're saying now. I get you. But I'm not sure that's how the insurance company would interpret it, and that's a question I have about your interpretation of the policy. It seems to me when you look at 4B, and I've just got to find it here one second, if the debris removal expense exceeds the amount payable under the 25% debris removal coverage limitation in paragraph 2 above, we will pay up to an additional $10,000. So let's say you have a loss of $500,000 total, just for a hypothetical. And your direct physical loss is $100,000, and debris removal is $30,000. Under the policy, they're going to pay 25% of the $100,000 direct physical loss, so that's $25,000, and then they're going to pay $1,000 for the deductible, right? Because that was provided for too. So under the policy, they pay $26,000, and your debris removal was $30,000. Aren't they going to pay the $4,000 difference? I don't know, it's kind of confusing for me to say to you and have you think on your feet, but what I'm getting at is you could have examples where your debris removal cost exceeds the $25,000, but the additional debris removal is under $10,000, and they'll pay that amount plus the 25%. You're saying if it exceeds it, they're only going to give you the $10,000. I don't think that's a correct reading of the policy. My understanding is that that's the Finnis argument, that if it exceeds that, then you won't get the $10,000. Well, if that's their argument, I don't think they're correct either. And I agree. I obviously do not believe that's how the policy should be interpreted. But under your example, clearly there's a concern there that there is a very small area where if the numbers are right, if the $10,000 were paid regardless under subsection 4B, that you could say that the policyholder is being given more than their loss. They're being overcompensated. But the policy provides for that because it says this extra $10,000 is not affected by our other limits in the policy. We'll pay this regardless if your losses exceed 4A and 4B. And it's possible that that is how it could or should be interpreted, that the insurance company would not be required to pay more than their losses. So let's say if the debris removal and the direct physical loss exceeded the limits of the policy by only $5,000, perhaps that's what the up to additional $10,000 is really getting at, that you would only get $5,000 because then you would be fully compensated. But in this instance, that's not what occurred. The losses were well over the $1.85 million. So they get up to $10,000. So, Counsel, going back to then what the Appleese argument is here, it's basically saying paragraph 4 of debris removal is an extra limit of insurance, but paragraph 2 is not. And you've indicated that the cases that have been cited to by the insurance company don't support that reading because the debris removal language in those cases, as well as in the model policy, provides that there is an extra limit for debris removal. Or, excuse me, it says it's an explicit statement that payments made for debris removal are not to exceed the limits of insurance. Is that accurate? Yes, Your Honor. And is it your reading here that even though the insurance company is indicating that paragraph 4 provides for an amount in excess of the limits of insurance, it doesn't say that. So why should we impute a limit of insurance for paragraph 2? Yes, Your Honor. That is exactly the opponent's position, that they're creating a limitation where there is not in the policy. And perhaps that it is created because the model policy has that limiting language. Perhaps that is what they intended to say, but it is not what the policy says. Thank you, Your Honors. Thank you, Counsel. Mr. Silver? Thank you, Your Honors. I represent Regent and General Casualty. The briefing is fairly extensive, and I invite you to refer to the briefing. I'll only add a few comments based on the oral argument provided by Counsel. Mr. Silver, I just wanted to ask you before you get started in your argument, is Regent a wholly owned subsidiary of General Casualty? What's that relationship there? I don't know, but I think that Regent is a subsidiary of QBE, and General Casualty is a subsidiary of QBE. I think they are two completely independent entities, neither one of which is a subsidiary of the other. It was kind of hard to tell from the record what that relationship exactly was, and I couldn't figure out why they were both being sued. I don't know why General Casualty was being sued, and I don't know why that was not resolved in the trial court. The policy is issued by Regent. There's no insurance policy issued by General Casualty, and I don't believe there's anything in the record establishing any relationship between General Casualty and Regent. I couldn't find anything, at least in the record. Okay. A couple of remarks. First of all, it's important to recognize that Section A sets forth the coverages. There's the principal coverage for the building. There are the additional coverages. Section B presents exclusions. Section C presents the limits of insurance language. Everything that is in Section A is subject to and controlled by what's in Section C, the limits of insurance, unless provided otherwise. In the debris removal provision, there is language providing otherwise under Sub 4, the $10,000 additional debris removal coverage. There is nothing that provides otherwise under Sub 2, the 25% clause. Maybe we should start there, then, because maybe you could be very clear in pointing out the language in Paragraph 4 that indicates that that amount is to be in addition to the limits of insurance, whereas Paragraph 2 specifically is within the limits of insurance. In other words, Paragraph 2, where does it specifically state that any payments made under that section for debris removal are not to exceed the limits of insurance? With respect to Paragraph 2, there is no language that expressly states that amounts payable are not subject to the limits of insurance. There's nothing that says that, just like there's nothing that says that in a score of other provisions that apply for additional coverages. The case law that you have advocated as controlling authority here did contain that express language. Is that right? Partially correct. This is important, and I really encourage the Court to go back and to read the Sixth Circuit Court of Appeals decision in the Witt Machine v. Essex insurance case. In that case, the debris removal provision number 2 was located in Section A. The provision which is the $10,000 limit provision, that was located in the limits of insurance section of the policy. Now, this is important. Section 2 is the one that provides the 25% payment issue. And in Witt, the Sixth Circuit said that Section 2 was subject to the limits of insurance set forth in Section C. Even though nothing in Sub 2 or in the limits of insurance section specifically said that the limits of insurance do not apply to Section 2. It was only in the context of looking at this additional $10,000 clause that the Sixth Circuit said that this language that was in the limits of insurance expressly shows that more than the policy limits could be owed under the $10,000 payment. Wouldn't it have been better, Mr. Silver, if this policy read something to the fact that if the Section 2 debris removal expense and the damage to the building, the direct physical damage, exceed the policy limits, then in that event, only coverage 4A is available? That is certainly one way of doing it. But there is almost no contract, especially an insurance contract or commercial contract, that cannot upon retrospect be argued to have been made clearer. But if contracts were drafted that way, they would be encyclopedic. So it is always easy on retrospect to propose alternative ways of doing things. If it had been done that way, we never would be in this courtroom. But I don't think that gets around looking at the way in which these contracts are put together and specifically looking at the language that is at issue here and squaring that with the analysis that we have made, which mirrors the analysis made by the Sixth Circuit. Yeah, but you're trying to advocate this policy as a model of clarity, and it absolutely isn't. Your own people at the outset took the exact position that Appellant is taking in terms of the interpretation of this language here. They were offering up, indicating that the limits were what Appellant is arguing here. True? I disagree with that, Your Honor. Let me clarify. First of all, any statements made by the claims person or adjuster after the loss is simply inadmissible for purposes of attempting to establish ambiguity. Why is it that the appellate court cannot consider statements made by representatives of the party? Because under the Rebicki case, cited in the Appellant's brief, the Court of Appeals expressly relied on Sections 402 and 403 of the American Jurisprudence Second on contracts. And in that case, and again I encourage the Court to go look at Rebicki, there was a block quote where the Court said that the American Jurisprudence provided a model and clarity as to how parole evidence can be applied for purposes of determining ambiguity. The Rebicki court said that preliminary negotiations between the parties may be considered in order to ascertain in what sense the parties themselves used ambiguous terms. And went on to say that the court may have recourse to the circumstances under which the contract was made and the conferences and correspondences between the parties pending the negotiation of the final agreement. So the Rebicki court says, sure, if there's some ambiguity in the contract, you can look at statements made contemporary to the formation of the contract. But that's a different legal position than saying you can resort to statements made by persons who don't even have any authority to bind the signing party made as much as a year or a year and a half after the contract was entered into. You can't look to post-loss statements made by an adjuster in order to determine what the intent of the contracting parties was at the time that the contract was entered into. Not intent, but evidence of ambiguity. So are you telling me that if, and this is a hypothetical now, I'm not suggesting this is what occurred here, but are you telling me that if the head of underwriting for your company, your client's insurance company, indicated in this case, I have read this language, I don't know what it means, this is very confusing, that that could not be considered as evidence of ambiguous language by a court? Do you think that that would be irrelevant and, in your words, inadmissible? Your Honor, I honestly do. And it's only because of a legal principle of what constitutes the scope of admissible parole evidence. This is different from a common sense point of view of whether a person's observations may be relevant for purposes of determining ambiguity. I'm talking about a threshold issue of admissibility to determine a legal question of whether a contract provision is ambiguous. And I think that under Rebicki, this court would have to enlarge the scope of the parole evidence rule in order to allow admissibility of the kind of evidence that you just referenced. Well, assuming the individual is qualified to be able to render such an opinion, okay, so it's not just some individual off the street that's plucked out to say, read this, what do you think? I'm talking now in my hypothetical that it's the head of underwriting. Why wouldn't that be an admission, whether or not it's binding or not? Why wouldn't that be something that would be very relevant and perhaps even an admission? I think it's because, well, first of all, it depends on when the statement was being made. But I will try to answer that question in the spirit in which it was asked, which is, again, I think that once you open the door to that kind of evidence, there's no way of stopping it. Now, if the underwriter offered testimony that at the time of the contract, it was my belief that this provision was ambiguous, then potentially that may be at issue for purposes of establishing ambiguity. But that's simply not what happened here. I also want to observe, since it's been brought up, that the statements that are attributed to the individuals, they're dubious at best. Mr. Tennant was an insurance agent. There's no evidence in the record that he had binding authority. An insurance agent's statements to an insured don't necessarily bind the insurance company. We need to know if he was a captured agent and what the scope of his authority was to speak for general casualty or regent, rather, at the time. Ms. Helm simply observed that her preliminary reading was wrong and unreasonable. That doesn't prove ambiguity. That proves that she was mistaken in her preliminary understanding. Well, confusion, maybe, is what she was describing, and I'm reading from the e-mail of hers of December 15, 2008, quote, I've read this over and over, and I don't think I understood this correctly at first. I thought the insured had $462,500 additional coverage for debris removal if the building limit was used or exceeded, but after reading this over again, I think I may have been wrong. I mean, certainly it indicates that at first blush to this individual in the claims office, the insurance coverage provided what the appellant is now arguing, true? It could be argued that that's the way it appears. I maintain, however, that that is not admissible evidence under Rabicki and that the court would have to expand the scope of the admissibility of parole evidence to establish ambiguity. I think it opens a huge door. The point is to ascertain what the intent of the contracting parties was if there's ambiguity. If there is ambiguity, we need to know what was the understanding. You can't do that by reference to statements made a year after the contract was entered into, particularly when they're made by people like an insurance agent, an adjuster, and others of that nature that are involved in the claims adjusting stage and they're not the drafters of the contract. I want to go back to the Witt case because I do think that the Sixth Circuit decision is very relevant here. Do you have any Illinois authority? I'll let you go to Witt here, but do you have any Illinois authority that's comparable to Witt? No, Your Honor. Nothing that addresses this specific issue. In fact, we've only located the three principal cases that were cited, Witt, Strowager, and Katz. Remember now, this is the Sixth Circuit Federal Court of Appeals. That court was looking at Section 2, the 25% clause, in Major Section A and then looking at Section C, Limits of Insurance. The court said this, The phrase, quote, the most we will pay, close quote, indicates that this is an additional limit on whatever debris removal coverage the policy provides and does nothing to remove the general language in Section C. In other words, this court is looking at this phrase, the most we will pay in Section 2, same in the Witt case as it is in our case, and then saying that this language does nothing to remove the general language in Section C. Furthermore, Witt's efforts to eliminate the overall policy limitations in Section C through the last sentence of Sub 4a is unavailing. That language may be ambiguous, but not in the way that Witt tries to read it and not in a way that undermines the entire policy. The fact that, quote, this limitation, which clearly refers to the limit of 25%, does not apply to any additional debris removal limit, does not mean that the overall policy limit provided in Section C does not apply. Indeed, even if the limitation in A does not apply to any additional limit in C, this does not mean that the overall limit in C does not apply. Counsel, at page 18 of your brief, you're quoting from Witt, and I want to make sure that I understand where the quote within the quote comes from. It's at the top of page 18, and it's midway through that first paragraph. Page 18. I got it. Thank you, Your Honor. And it says, in quotes, Payments under the following additional coverages will not increase the applicable limit of insurance, colon, debris removal, close quote. Was that the language that was contained in the Witt policy under debris removal? No, Your Honor. It was the language in the Witt policy that was in Section C. Remember now, in Witt, the 25% clause is in Section A, just like in Regents' policy. The $10,000 limit clause was in the limits of insurance section itself. Okay, so is this language that's in Witt for Section C in Section C of this policy that's at issue? Could you repeat that, Your Honor? I'm sorry. The language that I just quoted, is it in our insurance policy here that we're talking about in this case? No, it is not. Okay. But that language only refers to the effect of the additional $10,000. And that limitation language is in Section A. That's assuming that you're reading of Section 4 being correct, that Section 4 specifically is allowing for coverage above the limits of insurance, while Section 2 does not allow for coverage in excess of the limits of insurance. That is our position, but my explanation of the policy at Witt doesn't assume that. In Witt, again, 25% clause is in Section A. The $10,000 limit clause is in Section C. And the language that you quoted from, payments under the following will not increase, that statement is made specifically with respect to the $10,000. It's not made with respect to the 25% additional. Now, your question was, is that statement in Regents' policy? Payments under the following will not increase. It's not in Regents' policy in Section C, but it sure as heck is in Regents' policy in Section A, under the $10,000 additional coverage. Or words to that effect, if an increased limit of insurance is purchased, I'm sorry, I'm reading, we will pay up to an additional $10,000 for each location in any one occurrence under the debris removal coverage. Now, clearly that would suggest that the insurer is entitled to more than the policy limits for debris removal under the right facts, and that's exactly what Regents acknowledged here. So, in sum, the limits of insurance provision in Regents' policy does set a $1.85 million cap. That cap is absolute, unless provided otherwise. It is provided otherwise with respect to the $10,000 limit on debris removal. It is not provided otherwise with respect to the 25% additional coverages. And all I can do in conclusion is ask that the Court take a good, close look at the reasoning in the WIT case and regard that as persuasive in your analysis of the issues that are before the Court. One quick thing. Opposing counsel, I asked a question in regards to Paragraph 4, and specifically what that $10,000 would be for if we accepted Appellant's reading of the policy. What would it represent, payment under Section 4 or Paragraph 4 being $10,000 for what? And I'm not sure that I have heard an answer to that. If there is no answer to that, then is that not a reasonable interpretation, thus it doesn't become an ambiguous policy under your... I mean, if I were to discount or if we were to discount what you've said about the limits of insurance argument, because Appellant cannot come up with an explanation as to that $10,000 and what it would represent under Appellant's theory, that is not then a reasonable interpretation of this policy language. I think I understand the question, and I want to be sympathetic to her argument, but I believe the answer is yes. I think your question is, under the right facts, does the $10,000 have to be paid only if at least that amount has been incurred for debris removal expenses? I think the example given was, suppose the debris removal expenses were $6,000 and they were $4,000 short of the $10,000. Do you get the full $10,000 anyways? And it's my understanding that the answer to that is no. The reason is simple. This is payment up to an additional $10,000 for debris removal coverage. Debris removal coverage, not loss to your building coverage. So even if the policy limits don't fully compensate the loss to the building, the debris removal coverage is pegged only to those costs incurred with respect to whatever is spent to remove debris. Thank you, Counsel. Thank you. Ms. Barabas? I'd like to start with what Mr. Silver just spoke about, the up to additional $10,000. And I think for the most part, now that I've had a little time to reflect on it and to read the language without the pressure of needing to answer it, I think for the most part, I agree with Mr. Silver. It's up to an additional $10,000. Again, as I said earlier, the $10,000 goes into play when the policy holder is not being fully compensated. When it says up to an additional $10,000, they're not saying we're going to pay you $10,000, even if that overcompensates you. But if we're just off by a couple thousand dollars, you would get that amount. One of the examples would be if the building loss plus debris removal exceeded the permissible payments under subsection 4A by, let's say, $5,000. In that instance, the policy holder, because the language says up to $10,000, would not get $10,000. They would get $5,000. But if I understand you right, you're still saying even if they were compensated fully for their debris removal expense, if the combination of debris removal plus the loss to the building exceeded the total policy limit by $5,000, they would get that extra $5,000, which is compensating them for the building loss and not the debris removal. That's still your reading of it. No, Your Honor. I apologize. I wasn't clear. They would get additional money for the debris removal portion. This is a debris removal additional coverage. So when the building limit and the debris removal exceed that number, if the debris removal is not fully compensated, they get something working towards that full compensation. So in this instance, because debris removal was well above the amount that they received, they would have gotten the full $10,000. I'd like to talk about the ambiguity and whether or not the policy interpretation is reasonable. I hate to interrupt you again. But under this case, under the facts of the case before us, their debris removal did not exceed the 25%. Because their debris removal expense was around $246,000. The coverage under your theory is it was $462,000. Yes, Your Honor. The direct physical loss exceeded the limits of the policy. So the $1.85 went towards the building entirely. So if you look at it from that perspective, the policyholder received nothing but $10,000 for debris removal. So in this... Go on to your next argument. I apologize if I'm not being clear. That's all right. With regard to the ambiguity and reasonable interpretations, in this instance, for the court to find that the appellant's position is not reasonable, the court has to either disregard or determine that four insurance industry people were unreasonable in their interpretation of the policy. These are people that work in the insurance industry, that read policies on a daily basis, and that really had every motivation to interpret this policy as narrowly as possible. And here, we either see them coming to the exact same conclusion the appellant did, or citing great confusion, saying, I thought it said this, but now I'm not so sure. Someone help me because I cannot figure it out. And then it goes up the chain. It goes to Ms. Helms' supervisor, who said, Yes, General Cashelty will pay the $246,000 because that's your coverage. And then we have the independent adjuster, who issued three reports. And while only the third report was provided in this case, it's a reasonable conclusion that the first two reports had the same conclusion, that the debris removal was in addition to the $1.85 million. It was only the fourth report, several months later, that that adjuster came back and said, You know what? I think I got it wrong, too. So when it comes to whether or not an ambiguity exists, it is very difficult to see how you can say that the appellant's position is not reasonable, that there is not more than one reasonable interpretation of this policy, because defendants on people couldn't get it right. And Mr. Silver talked about the parole evidence rule, and whether this evidence is properly before the court. And I believe it is, for two reasons, just briefly. One, it's not really parole evidence. Parole evidence gets to the intent of the parties, promises that may or may not have been made prior to the entry of a contract. And it simply says, Listen, if you sign the contract, you're bound by the terms of that contract, not what you think it should have said, not what you talked about it saying, but what it actually said. We're not dealing with the intent of the parties. There's no detrimental reliance or an accusation that this policy is in some way misleading based on understanding prior to signing it. What an appellant is saying is that the policy is ambiguous. Here, as we stand here today, it is very difficult to read this policy, and reasonable lines will come to different conclusions about what the policy said. NLMA law is very clear. In that instance, it's not about the court saying the best interpretation of the policy, or what is most reasonable, but the court saying that when there is more than one reasonable interpretation, we will find in favor of the policyholder. And because of that, the appellant will structure this court, reverse the trial court rule in granting summary judgment. Thank you, counsel. You both made very good arguments, and the court will be in recess to take the matter under revising.